IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VIVIAN FRIETZE,

    Plaintiff,

v.                                                                        No. 12-cv-0584 SMV/CG

SAFECO INS. CO. OF AMERICA,

    Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO STRIKE

THIS MATTER is before the Court on Defendant Safeco's Motion to Strike . . . [Doc. 64], ("Motion to Strike"), filed on January 24, 2013. Having reviewed the submissions of the parties [Docs. 64, 71, 77] and the relevant law, and having heard oral argument on the motion on April 3, 2013, the Court finds that the motion is well-taken and should be **GRANTED**.

*Background*

Safeco Insurance Company of America ("Safeco") issued an auto policy of insurance to Plaintiff Vivian Frietze ("Policy"). On or about May 20, 2007, Plaintiff was involved in a motor vehicle accident with an underinsured motorist ("UIM"). After Plaintiff filed suit against the tortfeasor, she and the tortfeasor reached a settlement for the tortfeasor's liability policy limits. Plaintiff then made a UIM claim with Safeco under her Policy. Plaintiff and Defendant were unable to resolve the UIM claim informally.

Plaintiff filed this action in the Third Judicial District Court, County of Doña Ana, State of New Mexico, and Safeco removed it to this Court. Plaintiff alleges breach of contract and negligence and seeks declaratory judgment regarding her rights under the Policy. Plaintiff also

alleges in her Complaint that Safeco failed to provide reasonable settlement offers, failed to properly evaluate and investigate Plaintiff's claim, and breached its statutory and common law duties generally. Safeco denies all allegations of misconduct.

On July 24, 2013, the Honorable Carmen E. Garza, United States Magistrate Judge, entered a Scheduling Order [Doc. 16] setting out certain pretrial deadlines. The Scheduling Order provided:

> Plaintiff shall identify to all parties in writing any expert witness to be used by Plaintiff at trial and to provide expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) no later than October 22, 2012. All other parties shall identify in writing any expert witness to be used by such parties at trial and to provide expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) no later than November 21, 2012.

Scheduling Order [Doc. 16] at 2.

Plaintiff served her expert witness disclosure on October 19, 2012. *See* Plaintiff's Motion to Strike, Ex. A [Doc. 64-1] at 3–4. She identified four treating physicians as potential expert witnesses: Dr. Henderson, Dr. Saiz, Dr. Rios, and Dr. Delahoussaye. *Id.* at 1–2. Her disclosure was identical as to each witness:

> Dr. . . . will testify about the treatment he provided to [Plaintiff] as contained in his medical records. He may also testify about other treatment she received from health care providers as a result of the car crash. All treatment is contained in [Plaintiff's] medical records provided to Defendant. Dr. . . . will give his opinion as to the diagnosis and prognosis of [Plaintiff's] injuries. He may be asked to testify as to the necessity and reasonableness of her medical expenses.

*Id.* Plaintiff did not provide an expert report for any of the four treating physicians.

Defendant timely disclosed its expert, Dr. Radecki, on November 16, 2012. [Doc. 45]. Included with the disclosure was Dr. Radecki's expert report pursuant to Rule 26(a)(2)(B).[1] The report indicated that Dr. Radecki had reviewed all of Plaintiff's medical records from her four treating physicians, as well as records from other medical treatment that pre-dated the accident. *See* Plaintiff's Response to Motion to Strike, Exhibits 3A, 3B [Doc. 71-3] at 1 through [Doc. 71-4] at 10. Dr. Radecki opined that, while some of Plaintiff's complaints and impairments were causally related to the accident in question, a good portion were attributable to pre-existing conditions and stress. *Id*. [Doc. 71-4] at 7–10. He further opined that there had been some "over-utilization" of medical care; in other words, he felt that some of the care provided by Plaintiff's treating physicians was not medically necessary. *Id*. [Doc. 71-4] at 8.

Dr. Delahoussaye's deposition was scheduled for December 14, 2012. A few minutes before the deposition, he presented defense counsel with a report, dated December 13, 2012, entitled, "Review of Medical Records and Case Review." [Doc. 64-4]. The report began as follows:

> I have been asked to review medical records related to the care of Vivian Frietze. She sustained injuries as a result of a motor vehicle accident. I have been supplied with medical records documenting her care related to this incident. In addition I have been given a report formulated by Richard T. Radecki M.D. that included a review of medical records as well as expressing opinions related to the medical necessity of her care.
>
> The following is a list of the medical records that were provided to me and that were reviewed as part of preparation for this report.[2]

---

[1] There is no dispute regarding the timeliness or sufficiency of Defendant's expert disclosure.
[2] No list is provided in the text of the report. The report refers to an attachment entitled "Summary of medical records and charges," which is not part of the record. *See* Delahoussaye Report, [Doc. 64-4] at 4. Presumably that summary includes the list of medical records Dr. Delahoussaye received and reviewed. However, it is unclear from the record whether Drs. Delahoussaye and Radecki reviewed the same records.

> I have also reviewed the report of Dr. Radecki and I have opinions related to his report.

*Id*. at 1. Dr. Delahoussaye then proceeded to review and criticize Dr. Radecki's report. He concluded by stating, *inter alia*:

> I have reviewed the care and have determined that all of the care that has been provided to her for her motor vehicle accident is reasonable for the injuries that she sustained.
>
> I have reviewed the charges and I have determined that all the charges are reasonable and necessary based upon prevailing charges in this region.[3]

*Id*. at 4. Defense counsel proceeded with Dr. Delahoussaye's deposition but did not question him about his report.

Defendant filed its Motion to Strike on January 24, 2013. [Doc. 64]. It is important to note what relief Defendant is *not* requesting. Defendant does not seek to preclude Dr. Delahoussaye from testifying or from giving expert testimony. Defendant seeks only an order (1) striking Dr. Delahoussaye's expert report, and (2) restricting the testimony of Plaintiff's treating physicians, including Dr. Delahoussaye, to "fact opinions" that were formed during their treatment of the Plaintiff and derived from their personal observations and treatment. *See* Motion to Strike [Doc. 64] at 1, 9.

## *Discussion*

Rule 26(a)(2)(A) of the Federal Rules of Civil Procedure requires a party to disclose the identity of all expert witnesses. Rule 26(a)(2)(B) adds that:

---

[3] It is not entirely clear whether "all of the care provided to her" meant all of the care provided by all four treating physicians, or only the care provided by Dr. Delahoussaye himself. The Court assumes Dr. Delahoussaye intended the former.

4

> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
>
>> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>>
>> (ii) the facts or data considered by the witness in forming them;
>>
>> (iii) any exhibits that will be used to summarize or support them;
>>
>> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>>
>> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>>
>> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

It is undisputed that Dr. Delahoussaye produced what amounts to an expert report. It is equally undisputed that the report did not comply with Rule 26(a)(2)(B).[4] That is not the issue. The issue is whether the report was required at all. As the text of the Rule makes plain, the Rule contemplates two categories of experts: those retained or specially employed to testify, and other witnesses who may qualify as experts but were not retained or specially employed. Those in the first category must provide expert reports; those in the second category need not. However,

---

[4] In addition to being untimely, the report fails to include the specific information required by Rule 26(a)(2)(B) (ii−vi) regarding, for example, Dr. Delahoussaye's qualifications, his publications, other cases in which he has testified, and his compensation for reviewing materials and testifying.

experts do not always fit neatly into one category or the other. *See Sowell v. Burlington N. & Santa Fe Ry. Co.*, No. 03 C 3923, 2004 WL 2812090, at *2–3 (N.D. Ill. Dec. 4, 2004). It is undisputed that Dr. Delahoussaye is a treating physician. Unlike Dr. Radecki, he was not a stranger to the Plaintiff, retained solely to give expert testimony. But unlike most treating physicians, Dr. Delahoussaye has done more than merely treat the Plaintiff. He has reviewed materials beyond his own medical records and has performed, in his own words, a "case review." *See* Delahoussaye Report [Doc. 64-4] at 1. The question is whether, under those circumstances, Plaintiff was required to produce an expert witness report for Dr. Delahoussaye when he was disclosed as an expert.

Plaintiff argues that she had no such obligation. She argues that Dr. Delahoussaye's status as a treating physician places him outside the scope of Rule 26(a)(2)(B), or at the very least, that the law on this issue is "unsettled" in the Tenth Circuit. *See* Plaintiff's Response [Doc. 71] at 4. She correctly points out that the Local Rules for the District of New Mexico state that treating physicians are not required to prepare expert reports under Rule 26(a)(2)(B). *Id*. at 3 (citing D.N.M.LR-Civ. 26.3(b)). In addition, she argues that if a report was required, her failure to provide one was substantially justified or harmless. *Id.* at 5. Finally, Plaintiff argues that Dr. Delahoussaye's report was timely disclosed as a "rebuttal report" under Rule 26(a)(2)(D)(ii). The Court does not find Plaintiff's arguments persuasive.

Courts across the country have examined when a treating physician must provide a Rule 26(a)(2)(B) report. *See Garcia v. City of Springfield Police Dep't*, 230 F.R.D. 247, 247–49 (D. Mass. 2005) (collecting cases and concluding that requirement of expert report depends on whether treating physician is specially retained in connection with litigation and whether

testimony is based on personal observations from providing care and treatment); *Sowell*, 2004 WL 2812090 at *2–3 (collecting cases and concluding that expert report is always required where treating physician's testimony includes opinions on "causation, permanency, and prognosis"); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 241–42 (C.D. Ill. 2002) (collecting cases and concluding that expert report is not required where treating physician offers testimony on "causation, diagnosis, and prognosis"). However, the issue most courts have struggled with is not the one presented in this case. The primary area of controversy among the decisions cited *supra* is whether a treating physician may offer opinion testimony on causation and prognosis, even if she bases her opinions solely upon personal knowledge obtained from her treatment of the plaintiff. The majority view has been that causation and prognosis are encompassed in the ordinary care of a patient and thus do not subject the treating physician to the report requirement of Rule 26(a)(2)(B). *See, e.g.*, *Sheparodn v. West Beach Estates*, 172 F.R.D. 415, 416–17 (D. Haw. 1997). The minority view holds that a treating physician's primary function is to provide care and treatment, and determining causation is incidental to that treatment and typically based on whatever the patient has reported to the physician. *See, e.g., Sowell*, 2004 WL 2812090, at *4.

But the issue in this case is not whether Dr. Delahoussaye should be allowed to testify on causation or prognosis based upon personal knowledge obtained from his treatment of the Plaintiff. The issue here is whether Rule 26(a)(2)(B) requires an expert report from a treating physician who offers opinion testimony *based on information that has been provided to him for purposes of the lawsuit*, as opposed to opinions based on personal knowledge obtained through his treatment of the plaintiff. Courts have *not* struggled with that issue. Under circumstances

similar to those in this case, courts have routinely, and as far as the Court can tell, universally, held that a Rule 26(a)(2)(B) expert report is required. The general rule, as one court succinctly phrased it, is as follows:

> The treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of any injury.
>
> To the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient—as opposed to being subsequently supplied by an attorney involved in the litigation—then no Rule 26(a)(2)(B) statement should be required. However, when the doctor's opinion testimony extends beyond the facts disclosed during care and treatment of the patient and the doctor is specially retained to develop opinion testimony, he or she is subject to the provisions of Rule 26(a)(2)(B).

*In re: Aredia and Zometa Prods. Liab. Litig.*, 754 F. Supp. 2d 934, 937 (M.D. Tenn. 2010) (internal citations omitted). Numerous courts in other circuits and districts have followed this rule. *See, e.g., Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1410 (7th Cir. 2011); *Goodman v. Staples*, 644 F.3d 817, 825–26 (9th Cir. 2011); *Downey v. Bob's Disc. Furniture Holdings,* 633 F.3d 1, 6 (1st Cir. 2011); *Lorenzi v. Pfizer, Inc.* 519 F. Supp. 2d 742, 750 n.6 (N.D. Ohio 2007); *Kirkham v. Société Air Fr.*, 236 F.R.D. 9, 12 (D.D.C. 2006); *Garcia*, 230 F.R.D. at 249; *Zurba v. United States*, 202 F.R.D. 590, 591 (N.D. Ill. 2001); *Washington v. Arapahoe Cnty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 442 (D. Colo. 2000) (the application of Rule 26(a)(2)(B) depends on the substance of the treating physician's testimony rather than his or her status); *Elgas v. Colo. Belle Corp.*, 179 F.R.D. 296, 299–300 (D. Nev. 1998): *Piper v. Harnischfeger Corp.*, 170 F.R.D. 173, 175 (D. Nev. 1997); *Bucher v. Gainey Transp. Serv. of*

*Ind., Inc.*, 167 F.R.D. 387, 390 (M.D. Pa. 1996); *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 501 (D. Md. 1997); *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y. 1995).

The Honorable Bruce D. Black, former Chief United States District Judge, reached the same result in *Farris v. Intel Corp.*, 493 F. Supp. 2d 1174 (D.N.M. 2007), a case from this district that is directly on point. Farris sued Intel, claiming that he had developed rhinitis as a result of his exposure to noxious fumes at Intel's Rio Rancho plant. In the Initial Pre-Trial Report Farris identified Dr. William Christensen as a treating physician who "will testify as to [his] knowledge regarding the incident, [Farris'] injuries, diagnosis, prognosis, cost and treatment." *Id*. at 1177. The Initial Pre-Trial Report set forth deadlines. One such deadline was June 5, 2006, the date by which Farris was required to "identify to all parties in writing any expert witness to be used by Plaintiff at trial and to provide expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B)." *Id*. This deadline passed without Farris' submitting any expert disclosures or reports. *Id*.

On July 25, 2006, approximately seven weeks after the expert disclosure deadline, Farris' attorney served the defendant with two reports prepared by Dr. Christensen. Along with the reports, Farris served a "Supplemental and Rebuttal Expert Witness Disclosure," designating Dr. Christensen as a "rebuttal" expert. *Id*. The reports and disclosure were produced two weeks before Dr. Christensen's deposition, but after Defendant's expert witness deadline had passed. *Id*. at 1178. Intel moved to strike Dr. Christensen's reports for failure to comply with Rule 26(a). Judge Black granted the motion, struck the reports, and restricted the scope of Dr. Christensen's expert testimony:

> Dr. Christensen is permitted to give expert testimony regarding "fact opinions" as to causation, diagnosis, prognosis, and the extent

9

> of Plaintiff's disability or injury derived from his observations and treatment. However, such expert testimony is limited to "fact opinions" that Dr. Christensen formed based on his personal knowledge and observations obtained during his course of care and treatment of Plaintiff. Dr. Christensen is not permitted to provide expert testimony regarding any opinion he formed based on information learned outside of, and not related to, Plaintiff's treatment.

*Id*. at 1180 (internal citations omitted) (citing *Zurba*, 202 F.R.D. at 591). The Court finds Judge Black's decision to be well-reasoned, compelling, and entirely consistent with the opinions of other courts that have addressed this issue. The Court finds, therefore, that under the circumstances of this case, Plaintiff was required by Rule 26(a)(2)(B) to submit an expert report for Dr. Delahoussaye to the extent his opinions were based on materials and information provided to him for purposes of providing (in his words) a "case review."[5] *See* Delahoussaye Report, [Doc 64-4] at 1.

The Court further finds that Dr. Delahoussaye's December 13, 2012 report did not comply with the requirements of Rule 26(a)(2)(B), in that (1) it was not timely served, and (2) it did not provide the specific information required by Rule 26(a)(2)(B)(ii–vi).[6]

---

[5] *Farris* answers Plaintiff's argument based on Local Rule 26.3, which reads, "Treating physicians need not prepare an expert report as required by FED. R. CIV. P. 26(a)(2)(B)." D.N.M.LR-Civ. 26.3 (effective Jan. 1, 2012). Plaintiff would have the Court interpret the Rule to mean, "No treating physician need ever prepare a Rule 26(a)(2)(B) expert report, under any circumstance." *See* [Doc. 71] at 3, 5, 7. However, that local rule was in effect—and had been in effect for some time—when *Farris* was decided. *Compare* D.N.M.LR-Civ. 26.3 (effective April 11, 2006), available at http://www.nmcourt.fed.us/web/DCDOCS/files/LRFinalNRL.pdf, *with Farris*, 493 F. Supp. 2d at 1174 (issued on March 14, 2007). In *Farris*, Judge Black struck the expert report of a treating physician because it did not satisfy the requirements of Rule 26(a)(2)(B). If Plaintiff's interpretation of the Local Rule were correct, the holding in *Farris* would not only be wrong, it would be nonsensical. The Court believes that a more reasonable interpretation of the Local Rule is that it was intended to reflect the majority view on Rule 26(a)(2)(B), i.e., that a treating physician need not prepare an expert report when his opinions are based solely on his own personal observations and treatment.

[6] Because Dr. Delahoussaye's report was insufficient under Rule 26(a)(2)(B)(ii–vi), the Court need not address Plaintiff's argument that it was a timely "rebuttal" report under Rule 26(a)(2)(D)(ii). However, the Court will offer three comments. First, Plaintiff never identified Dr. Delahoussaye as a rebuttal witness; he was identified as a treating physician. Second, a rebuttal witness is one whose testimony cannot be anticipated. *See, e.g.*, Scheduling Order [Doc. 16], at 3 ("Counsel are directed that the Pretrial Order will provide that no witness except rebuttal witnesses *whose testimony cannot be anticipated,* will be permitted to testify unless [identified] no later than thirty

Rule 37 provides, in relevant part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Although a court need not make explicit findings regarding substantial justification or harmlessness, it should consider the following factors: (1) any prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure any prejudice; (3) the extent to which introducing the testimony would disrupt the trial; and (4) the violator's bad faith or willfulness. *Woodworkers Supply, Inc. v. Principal Mut. Life. Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *see also Farris, supra* (discussing application of the four factors).

With respect to the first factor, the Court agrees that Defendant would be prejudiced by allowing Plaintiff to introduce Dr. Delahoussaye's report. As was the case in *Farris, supra*, the report was not disclosed until after Defendant's disclosure deadline had passed, precluding Defendant from offering a report—from Dr. Radecki or perhaps another expert—analyzing Dr. Delahoussaye's opinions. And unlike the situation in *Farris*, where the expert report was provided two weeks before the expert's deposition, 493 F. Supp. 2d at 1178, Dr. Delahoussaye's report was produced only a few minutes before his deposition was scheduled to begin. A principle purpose of Rule 26 is to permit "reasonable opportunity to prepare for effective cross examination and arrange for expert testimony from other witnesses." *Washington*, 197 F.R.D. at 442 (internal quotation marks and alteration omitted). Obviously, defense counsel had no time to prepare her cross examination of Dr. Delahoussaye on his report, let alone consult with an

---

(30) days prior to the time set for trial.") (emphasis added). Third, to the extent that any new and unanticipated issues were raised in Dr. Radecki's report—and the Court does not so find—and Plaintiff's counsel felt that a rebuttal expert was required, the proper procedure would have been to identify the new expert and provide an expert report that complied with Rule 26(a)(2)(B) & (D), not simply to have his expert tender a previously undisclosed, non-compliant report to defense counsel minutes before his deposition.

expert for assistance, prior to the deposition. Were the Court to allow Plaintiff to use the report, the Court would have to allow Defendant another opportunity to depose Dr. Delahoussaye, and perhaps allow Defendant to retain and disclose other experts to rebut his testimony. The obvious time and expense that would entail certainly establish prejudice.

Regarding the second and third factors, curing the prejudice would be costly and time-consuming, as described above. Defense counsel would need to consult with Dr. Radecki (or perhaps other experts) regarding Dr. Delahoussaye's report. Dr. Delahoussaye would need to be re-deposed. Dr. Radecki would need to review the second deposition and perhaps prepare another report of his own. At the very least, defense counsel would need to consult with Dr. Radecki regarding his review of the second deposition.[7] Thus, while the prejudice could be cured by, essentially, restarting expert disclosures and discovery, doing so would be costly and would implicate the third factor by disrupting the existing case management deadlines, and most likely, the trial itself, which is set to begin on October 22, 2013. Therefore, the second and third factors weigh in favor of granting the Motion to Strike.

The Court does not believe the fourth factor—the violator's willfulness—tips the scale in one direction or the other. Plaintiff's counsel has represented to the Court that he did not provide the materials to Dr. Delahoussaye, and the Court accepts his representation.[8] However, the manner in which Dr. Delahoussaye obtained the materials is irrelevant; someone (presumably the

---

[7] After deposing Dr. Delahoussaye a second time, it is conceivable that Defendant would need to re-depose the other three treating physicians. For example, if in formulating his opinions on the reasonableness and necessity of their care, Dr. Delahoussaye made some assumptions about what they had done—assumptions based on ambiguous entries in their medical records—Defendant might feel the need to re-depose the treating physicians to determine whether Dr. Delahoussaye's assumptions were correct. The Court raises this as a possibility, while cognizant of the fact that Defendant has not raised this as an issue.

[8] Counsel for Defendant admits in her Reply brief that Plaintiff's counsel appeared to be "just as surprised as Safeco's counsel" when Dr. Delahoussaye tendered his report shortly before his deposition. [Doc. 77] at 5.

Plaintiff) gave them to him. His report clearly states, "I have been supplied with medical records documenting [Plaintiff's] care [as well as] a report formulated by Richard T. Radecki, M.D. . . . ." Delahoussaye Report, [Doc. 64-4] at 1. Regardless of how Dr. Delahoussaye obtained the materials, once he reviewed them he became subject to the requirements of Rule 26(a)(2)(B). *See Farris* and other cases discussed *supra* at pp. 8 to 10.

Having considered all of the four *Woodworkers* factors, the Court finds that Plaintiff failed to comply with that portion of the Scheduling Order that required her to provide "expert reports pursuant to FED. R. CIV. P. 26(a)(2)(B) no later than October 22, 2012," [Doc. 16], and that such failure was not substantially justified under Rule 37(c)(1).

**IT IS THEREFORE ORDERED ADJUDGED, AND DECREED** that Defendant's Motion to Strike [Doc. 64] is hereby **GRANTED.** Dr. Delahoussaye's December 13, 2012 report is hereby **STRICKEN.** Each of the four treating physicians identified in Plaintiff's expert witness disclosure [Doc. 64-1], Ex. A, will be permitted to give "fact opinions" to the extent such opinions were formulated during his treatment of the Plaintiff and were based on, and were derived from, that physician's personal knowledge. None will be permitted to provide expert testimony regarding any opinion he formulated based on information obtained outside of, and not related to, his treatment of the Plaintiff.

**IT IS SO ORDERED.**

                                                                                                  _____
                                                                                                  **STEPHAN M. VIDMAR**
                                                                                                  **United States Magistrate Judge**
                                                                                                  **Presiding by Consent**